IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| United States of America,           ) | |
|                                      ) | |
|            Plaintiff,                ) | |
|                                      ) | **ORDER ON PRETRIAL MOTIONS** |
| vs.                                  ) | |
|                                      ) | Criminal No. 3:06-cr-14-17 |
| Gabriel Martinez,                    ) | |
|                                      ) | |
|            Defendant.                ) | |

Before the Court are three pretrial motions filed by Defendant Gabriel Martinez. The United States has filed responses to each of these motions.

## SUMMARY OF DECISION

The Motion to Sever Counts Eighteen, Twenty-One, and Twenty-Five for a separate trial is **DENIED**. The Motion to Dismiss Counts Fifteen and Sixteen for improper venue is **DENIED**. The Motion to Transfer Trial to the Appropriate Alternative Venue of the District of Minnesota under Fed. R. Crim. P. 21(b) is **DENIED**.

### I. Motion to Sever Counts Eighteen, Twenty-One, and Twenty-Five

Defendant Gabriel Martinez has moved to sever Counts Eighteen, Twenty-One, and Twenty-Five for a separate trial (Doc. #785). Defendant is charged with Attempted Escape from Custody in Count Eighteen, Conspiracy to Escape from Custody in Count Twenty-One, and Obstruction of Justice in Count Twenty-Five. All three counts relate to an alleged escape attempt in September 2007 from the state correctional facility where Defendant was in custody awaiting trial in this case. Defendant contends he will be severely prejudiced if he is required to defend against the escape

1

counts at the upcoming trial, and requests that this Court exercise its discretion to order a separate trial on those counts.

The United States has filed a brief in opposition (Doc. #830). The United States argues the escape-related discovery is not voluminous, so Defendant's ability to prepare for trial is not prejudiced. Furthermore, the United States argues that evidence of the attempted escape would be admissible at a separate trial on the remaining charges to show consciousness of guilt.

Rule 8, Fed. R. Crim. P., provides for joinder of offenses or defendants in the same indictment in certain circumstances. Rule 14(a), Fed. R. Crim. P., allows a district court to sever properly joined offenses if either a defendant or the United States will be prejudiced by the joinder. See United States v. Rock, 282 F.3d 548, 552 (8th Cir. 2002). "[T]he joinder and severance rules 'are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" United States v. Blaylock, 421 F.3d 758, 766 (8th Cir. 2005) (quoting Zafiro v. United States, 506 U.S. 534, 540 (1993)). The rules are to be liberally construed in favor of joinder, and the presumption against severing properly joined cases is strong. United States v. Ruiz, 412 F.3d 871, 886 (8th Cir. 2005).

A defendant who moves for severance must show "real prejudice." See Blaylock, 421 F.3d at 766. This requires something more than the mere fact that he may have had a better chance for acquittal if the counts had been tried separately. Id. Prejudice must be "severe or compelling" in order to grant a motion for severance. United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint

trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 538.

"Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together." United States v. Taken Alive, 513 F.3d 899, 903 (8th Cir. 2008) (citations omitted). It is well-established in this circuit that evidence of flight or escape from custody is admissible and has probative value as circumstantial evidence of consciousness of guilt. See United States v. Urbina, 431 F.3d 305, 312 (8th Cir. 2005); United States v. Hankins, 931 F.2d 1256, 1261 (8th Cir. 1991). The Eighth Circuit has stated that "[f]light and escape are similar evasive acts," so the analytical approach used in flight cases applies with equal force to evidence of escape. Hankins, 931 F.2d at 1261.

Evidence of flight subsequent to the commission of a crime is admissible to show consciousness of guilt "where other facts suggest that [a defendant's] decision to flee was related to that offense." United States v. Boone, 437 F.3d 829, 840 (8th Cir. 2006). To determine whether flight evidence is sufficiently probative of guilt to be admissible, the court must examine whether the evidence supports the following four inferences: (1) that the defendant fled; (2) that the flight evinced consciousness of guilt; (3) that the guilt related to the crime charged in this case; and (4) that the consciousness of guilt flowed from actual guilt of the crime charged. United States v. Chipps, 410 F.3d 438, 449-50 (8th Cir. 2005).

The Eighth Circuit has previously upheld the joinder of an escape charge with an underlying drug conspiracy charge. See United States v. Williams, 295 F.3d 817, 819 (8th Cir. 2002). In Williams, the defendant escaped from custody after pleading guilty to a charge of conspiracy to

distribute cocaine.  Id.  The defendant was captured and eventually withdraw his guilty plea to the conspiracy charge.  Id.  The indictment was superseded to add an escape charge, and the escape and drug conspiracy counts were joined for trial.  Id.  The Eighth Circuit concluded there was no error in joinder of the counts.  Id.  The Eighth Circuit held that defendant failed to establish prejudice as to the conspiracy charge, where "evidence of the fact of the escape would have been admissible to show consciousness of guilt in a separate trial on the conspiracy charge."  Id.

Other courts of appeals have also found no unfair prejudice in the joinder of escape or bail jumping charges with the underlying substantive offense.  See United States v. Gabay, 923 F.3d 1536, 1540 (11th Cir. 1991) (finding no unfair prejudice because evidence of bond jumping was admissible to prove guilty conscience with regard to the counterfeiting, and evidence of the counterfeiting was admissible to prove motive for the flight); United States v. Peoples, 748 F.2d 934, 936 (4th Cir. 1984) (concluding defendant failed to show unfair prejudice because evidence of escape was admissible to prove guilty conscience regarding the bank robbery, and evidence of the bank robbery was admissible to prove motive for the escape under Fed. R. Evid. 404(b)); United States v. Ritch, 583 F.2d 1179, 1181 (1st Cir. 1978) (holding no prejudice from joinder because the facts concerning defendant's failure to appear for trial would have been admissible at trial of the underlying drug charges).

Here, Defendant does not contend the escape counts have been misjoined with the other substantive offenses.  Rather, he argues that the Court should grant a separate trial on the escape counts because he will be severely prejudiced if he must defend these counts at the upcoming trial.  Much of Defendant's argument in the supporting brief focuses on the short time he would have to prepare these counts for trial.  However, the trial has since been continued from January 22, 2008,

to April 7, 2008, so that particular aspect of Defendant's argument has been rendered moot. The escape counts were added to this case when the Indictment was superseded for the fourth time on September 28, 2007, and Defendant was arraigned on the escape counts on October 11, 2007. The Court finds that Defendant has now had sufficient time to prepare for the trial of the escape counts on the April 7th trial date, so that particular argument does not support a showing of real prejudice under Fed. R. Crim. P. 14(a).

      After carefully considering the facts and circumstances of this case, the Court concludes Defendant has not shown prejudice sufficient to warrant severance of the escape counts. Defendant will not suffer unfair prejudice if the escape counts are jointly tried with the drug conspiracy and homicide counts. Evidence of the alleged escape attempt would be admissible at a separate trial on the underlying substantive offenses to show consciousness of guilt. Likewise, evidence regarding the drug conspiracy and homicide charges would necessarily be admissible at a separate trial on the escape counts to prove motive for the escape.

      Indeed, the United States' theory of the case is that the alleged escape attempt had a strong connection to the underlying substantive offenses. Numerous witnesses have related at change of plea hearings that they assisted the Defendant in a plot to escape from the correctional center in Rugby, North Dakota. The United States contends that Defendant attempted to escape after he learned that Jorge Arandas, a top-level person in the drug organization who had also been charged with the homicide, had entered into a plea agreement with the United States. The timing of the escape plot evinces consciousness of guilt, as the plan arose after it became apparent that a witness who claimed full knowledge of Defendant's involvement had come forward.

Because the supposed motive for the escape attempt is highly entwined with details of the drug organization and the homicide of Lee Avila, the Court finds it would be highly inefficient to order a separate trial on the escape counts, particularly when Defendant can show no real or unfair prejudice, much less severe or compelling prejudice, based on the admissibility of the evidence. The Court also declines to order a bifurcated trial on the escape counts for the same reasons.

Based on the foregoing analysis, Defendant's Motion to Sever Counts Eighteen, Twenty-One, and Twenty-Five is **DENIED**.

## II. Motion to Dismiss Counts Fifteen and Sixteen

Defendant has filed a Motion to Dismiss Counts Fifteen and Sixteen for improper venue (Doc. #802). Count Fifteen charges Defendant with Death Caused by Use of a Firearm During and In Relation to Drug Trafficking Crimes and a Crime of Violence in violation of 18 U.S.C. §§ 924(j)(1) and 2. Count Sixteen charges him with Murder in Furtherance of a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. Both charges stem from the homicide of Lee Avila in East Grand Forks, Minnesota, on June 30, 2005. Defendant contends that venue for Counts Fifteen and Sixteen must be in the District of Minnesota because the alleged murder occurred in Minnesota. The United States has filed a brief in opposition (Doc. #832).

Proper venue is required by Article III, Section 2 of the United States Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure. United States v. Morales, 445 F.3d 1081, 1084 (8th Cir. 2006). Venue must be determined from the nature of the crime alleged and the location of the act or acts constituting it. United States v. Washington, 109 F.3d 459, 466 (8th Cir. 1997). When a defendant is charged with more than one count, venue must be proper with respect to each count. United States v. Granados, 117 F.3d 1089, 1091 (8th Cir. 1997).

In many cases, venue will be proper in more than one district. Section 3237(a), Title 18 U.S.C., provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." In a conspiracy case, venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the conspirators, even though some of them were never physically present there. United States v. Hull, 419 F.3d 762, 768 (8th Cir. 2005).

In order to determine whether venue is proper in the District of North Dakota on Counts Fifteen and Sixteen, the Court must examine the acts which constitute the elements of those crimes. Count Fifteen charges that Defendant caused the death of Lee Avila by use of a firearm in violation of 18 U.S.C. § 924(j)(1). Count Fifteen specifically alleges that Defendant caused the death in the course of committing a violation of 18 U.S.C. § 924(c)(1) by knowingly using a firearm during and in relation to a drug trafficking crime, as alleged in Count One of the Indictment.

Section 924(j)(1), Title 18 U.S.C., provides, "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall– (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . ." Section 924(c), which is incorporated by reference in § 924(j)(1), makes it a crime for a person to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime." Based on the statutory language, it is clear that commission of the underlying drug trafficking crime or crime of violence is an element of the offense under § 924(j)(1). See United States v. Smith, 452 F.3d 323, 335-36 (4th Cir. 2006) (holding that commission of a drug trafficking offense is an essential element under § 924(c)(1)(A), and that violation of § 924(c) is

itself a conduct element of § 924(j)); see also United States v. Wallace, 447 F.3d 184, 187 (2d Cir. 2006) (concluding that a murder in violation of § 924(j)(1) requires proof of three elements: (1) that defendant committed the predicate drug trafficking offense; (2) that during and in relation to that underlying offense the defendant knowingly used or carried a firearm; and (3) that in the course of using that firearm defendant committed a murder).

In Count Sixteen, Defendant is charged with causing the intentional killing of Lee Avila while engaging in and working in furtherance of a continuing criminal enterprise punishable under 21 U.S.C. § 848, as charged in Count Fourteen of the Indictment. Count Sixteen also charges that Defendant committed the murder while engaging in a controlled substance offense punishable under 21 U.S.C. § 841(b)(1)(A), as alleged in Count One of the Indictment.

Section 848(e)(1)(A), Title 21 U.S.C., provides certain penalties for "any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in any offense punishable under section 841(b)(1)(A) of this title . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual." In order to prove continuing criminal enterprise ("CCE") murder, the United States must prove four elements: (1) that the defendant was engaged in or working in furtherance of a CCE; (2) that the defendant intentionally commanded, induced, procured, or caused the killing; (3) that the killing actually resulted; and (4) that there was a substantive connection between the killing and the CCE. United States v. Johnson, 495 F.3d 951, 967 (8th Cir. 2007). The United States must also prove the existence of the CCE, which is a drug organization that meets certain criteria in 21 U.S.C. § 848(c). See id. at 968. Alternatively, a defendant may also commit a violation of § 848(e)(1)(A) if he is engaged in a drug trafficking crime punishable under § 841(b)(1)(A). The essential conduct

8

elements of that particular crime are "a drug trafficking offense and an intentional killing." Smith, 452 F.3d at 335.

After examining the essential elements of the crimes charged in Counts Fifteen and Sixteen, the Court is convinced that venue is proper in the District of North Dakota. In order to prove that Defendant violated 18 U.S.C. § 924(j)(1) and 21 U.S.C. § 848(e)(1)(A), the United States must prove that Defendant was engaging in the underlying drug conspiracy, as charged in Count One of the Indictment. Defendant has not argued, nor could he, that the drug conspiracy charge is not properly venued here. Numerous overt acts in furtherance of the drug conspiracy were committed in North Dakota. Large quantities of drugs, particularly methamphetamine, were distributed in North Dakota as part of the conspiracy.

Because venue is proper in North Dakota on the drug conspiracy charge, it necessarily follows that venue is proper here on the homicide charges. Because acts in furtherance of the drug conspiracy occurred in North Dakota, and the drug conspiracy is an essential element of both Counts Fifteen and Sixteen, venue for Counts Fifteen and Sixteen lies in North Dakota. See Smith, 452 F.3d at 335-36. The fact that Lee Avila was murdered in Minnesota simply does not compel the conclusion that venue is proper only in the District of Minnesota. Even assuming for the sake of argument that the District of Minnesota would have been a proper venue for the homicide counts, that does not preclude the District of North Dakota from also being a proper venue. Defendant's Motion to Dismiss Counts Fifteen and Sixteen for Improper Venue is **DENIED**.

### III.  Motion to Transfer Trial to the Appropriate Alternative Venue of the District of Minnesota under Fed. R. Crim. P. 21(b)

Defendant has moved for an order transferring his trial in this matter to the District of Minnesota under Fed. R. Crim. P. 21(b) (Doc. #799). Defendant contends this Court should exercise

its discretion to transfer under Rule 21(b) because this is truly a Minnesota case. Defendant also contends the trial should be transferred to Minnesota because he is Hispanic, and the jury in North Dakota will be white. The United States has filed a brief in opposition (Doc. #831).

At the hearing on this motion, Defendant focused on the racial composition of the jury pool. Defendant introduced as exhibits a spreadsheet describing total population by race in the counties of the Eastern Division of this district, as well as affidavits from several attorneys who have tried criminal cases in the Eastern Division. In these affidavits, the attorneys stated there did not appear to be any Latinos or Hispanics in the jury pool in their cases, to the best of their knowledge. At the hearing, Defendant argued for the first time that a <u>Batson</u> analogy should be applied as part of the Rule 21(b) analysis to transfer this case to Minnesota. In a reply brief submitted after the hearing, Defendant claims the United States has intentionally manipulated the venue rules to gain a tactical advantage based on the racial composition of the jury pool in this district. The United States vehemently denies this accusation.

Rule 21(b), Fed. R. Crim. P., provides, "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." The decision whether to transfer a case under Rule 21(b) belongs to the sound discretion of the district court. <u>United States v. Green</u>, 983 F.2d 100, 103 (8th Cir. 1992). The Eighth Circuit has held that the following factors may be considered in deciding whether to transfer under Rule 21(b): (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place

of trial; (9) the docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. United States v. McGregor, 503 F.2d 1167, 1170 (8th Cir. 1974) (citing Platt v. Minn. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964)).  The home of the defendant has no independent significance in determining whether a transfer would be in the interest of justice, although it may be considered with regard to convenience.  Id.

After considering these factors, the Court concludes that a transfer to the District of Minnesota is not warranted based on the convenience of the parties and witnesses.  This is a highly complex, multi-defendant case arising out of the operation of a large drug organization in the Red River Valley.  Many of the acts and events at issue in this case occurred in North Dakota, particularly in the Fargo area.  Some of the acts and events occurred in Minnesota, particularly in East Grand Forks, which is located approximately 75 miles north of Fargo on the North Dakota-Minnesota border.  The United States has filed a preliminary witness list in this case, and a large number of the approximately 100 witnesses are located in North Dakota.  Although some of witnesses are located in Minnesota, many of the Minnesota witnesses are from the East Grand Forks area, which is more closely located to Fargo than to any of the federal courthouses in the District of Minnesota.  Furthermore, many of the in-custody witnesses are being held in North Dakota pending sentencing, and they will continue to be held here through the conclusion of the trial.

Currently, five defendants remain in this case and are set for trial.  Defendant Gabriel Martinez is being held in custody in North Dakota, as are co-defendants Alan Wessels, Jose Lupercio, and Marcus Gonzales.  Co-defendant Tyrone Williams is on pretrial release in the State of Washington.  Moreover, none of the co-defendants in this case have joined in Defendant's motion to move the trial to Minnesota, and Defendant has not moved to sever himself from the joint trial.

The Court finds that the location of the defendants weighs in favor of North Dakota as the more convenient venue. The Court also notes that all of the defendants have been appointed counsel who live in North Dakota or in the Fargo-Moorhead area.

In his motion to transfer, Defendant focuses on the fact that Lee Avila was killed in East Grand Forks, Minnesota. Defendant appears to view this case as primarily a murder case. However, the homicide counts, although serious, are only one part of the large-scale drug conspiracy which is at the heart of this case. Many of the acts which will be at issue in the trial, including those events directly leading to the homicide of Lee Avila, occurred in North Dakota. The fact that the homicide occurred just across the border in Minnesota does not mean trial would be more convenient there. The Court concludes that transfer to the District of Minnesota would be highly inconvenient for most of the witnesses and all of the parties in this case, so a transfer under Fed. R. Crim. P. 21(b) would be inappropriate.

Much of the Defendant's argument on the motion to transfer to the District of Minnesota focuses on the racial composition of the jury pool in North Dakota. Defendant contends this case must be transferred to Minnesota because he is Hispanic, and there is a "guarantee" of an all-white jury in North Dakota. Although Defendant has been less than clear about the connection between this argument and Rule 21(b), the Court presumes he is attempting to show that a transfer under Rule 21(b) would be in the interest of justice.

Because the Court has already determined that transfer under Rule 21(b) is not warranted based on the convenience of the parties and witnesses, the Court is precluded from transferring this case under the rule. Rule 21(b) clearly permits a court to transfer only for convenience <u>and</u> in the interest of justice. Nevertheless, the Court is not persuaded by Defendant's argument that this case

should be transferred to Minnesota based on the racial composition of the jury pool in the Eastern Division of the District of North Dakota.

Defendant has produced a spreadsheet prepared by the North Dakota State Data Center at North Dakota State University which shows the total population by race for the twelve counties in the Eastern Division. Defendant has also submitted affidavits from four attorneys who have tried cases in the Eastern Division, which state that "to the best of their knowledge," none of the members of the jury pool were Hispanic or Latino. However, notably absent from the Defendant's submissions is any showing of the white and minority population figures for the geographic area of Minnesota from which a jury would have been picked in that district. Therefore, the Court has no basis for comparing the jury pool in Minnesota with the jury pool in North Dakota.

Furthermore, although Defendant has requested that this case be transferred to Minneapolis, the Court concludes that would not be the proper division for this case if venue were proper in the District of Minnesota. See United States v. Wattree, 431 F.3d 618, 621 (8th Cir. 2005) (stating that a defendant does not have the right to be tried in a particular division of a district, and "a district court has broad discretion in determining where within a district the trial is held"). Defendant's argument in favor of transfer is based largely on the occurrence of the homicide in East Grand Forks, Minnesota, which is in Polk County. Polk County is in the Sixth Division of the District of Minnesota, and court for the Sixth Division is held in Fergus Falls. Defendant has not produced any evidence regarding the minority population in Minnesota, much less any evidence that a jury pool from the Sixth Division in northwestern Minnesota would have a greater minority population than eastern North Dakota. The Court concludes Defendant has not sufficiently shown that a transfer to

13

the District of Minnesota would be in the interest of justice based on the racial composition of the jury pool in this district.

Moreover, Defendant has produced absolutely no evidence to support his contention that the United States has manipulated the venue provisions to gain a tactical advantage based on the racial composition of the jury pool. The Court finds that accusation to be baseless. See United States v. Cannon, 88 F.3d 1495, 1501 (8th Cir. 1996), abrogated on other grounds, Watson v. United States, 128 S. Ct. 579 (2007) (holding that the variance in minority population between North Dakota and Minnesota was "insufficient alone to create an inference that Defendants were purposefully enticed to North Dakota in order to control intentionally the racial composition of the jury").

The Court is also not persuaded by Defendant's argument that a Batson analysis should apply to his motion for transfer of venue under Rule 21(b). Nevertheless, Defendant would not succeed under the Batson analogy he proposes in any event. Even assuming that Defendant has made a prima facie case of racial discrimination in the selection of venue for this case, see United States v. Wilcox, 487 F.3d 1163, 1170 (8th Cir. 2007), which the Court finds he has not, he still cannot prevail. The United States has a sufficient race-neutral explanation for laying venue in the District of North Dakota, because venue is clearly proper here based on the fact that many of the acts constituting the charged crimes occurred in this district. See id. Because Defendant has not proven that venue in North Dakota was motivated by purposeful discrimination, his Batson analogy fails.

The Court concludes that transfer to the District of Minnesota is not warranted for the convenience of parties and witnesses, nor is it in the interest of justice. Defendant's Motion to Transfer Trial to the Appropriate Alternative Venue of the District of Minnesota under Fed. R. Crim. P. 21(b) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 13th day of March, 2008.

                                                /s/   Ralph R. Erickson
                                        Ralph R. Erickson, District Judge
                                        United States District Court