UNITED STATES DISTRICT COURT

DISTRICT OF NORTH DAKOTA

SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br> vs.<br><br> GABRIEL MARTINEZ,<br><br>                    Defendant. | CRIMINAL CASE NO. 3:06-CR-14-17<br>CIVIL CASE NO. 3:14-CV-46<br><br>ORDER |

## INTRODUCTION

On April 24, 2014, defendant Gabriel Martinez filed a motion to vacate, set
aside, or correct a sentence by a person in federal custody pursuant to 28 U.S.C.
§ 2255 ("2255 petition").   (Docket 1411).[1]   On November 3, 2014, Chief Judge
Ralph R. Erickson entered a memorandum opinion and order.   (Docket 1424).
Judge Erickson's order denied Mr. Martinez's 2255 petition with prejudice except
for two claims.   Id. at p. 26.   An evidentiary hearing was scheduled to address
the following: "(1) whether counsel forced Martinez to plead guilty; and
(2) whether counsel adequately prepared for trial."   Id.   On May 7, 2015, Judge
Erickson filed an order of recusal.   (Docket 1442).   The case was assigned to
Chief Judge Jeffrey L. Viken of the United States District Court for the District of
South Dakota.   Id.   A hearing was held on Mr. Martinez's 2255 petition on

---

[1]All citations to the record will be to the criminal case, United States v.
Martinez, CR. 3:06-CR-14-17.

October 14, 2015.[2]   Post-hearing briefing was ordered and filed.   For the
reasons stated below, Mr. Martinez's 2255 petition is denied.

## ANALYSIS

On December 6, 2007, defendant Gabriel Martinez and 27 co-defendants
were indicted in a multi-count fifth superseding indictment.   (Docket 829).   The
47-page indictment charged Mr. Martinez with the following offenses:

Count 1:   Conspiracy to possess with intent to distribute and
           distribution of methamphetamine;

Count 10:  Possession with intent to distribute methamphetamine;

Count 15:  Death caused by use of a firearm during a crime of
           violence;

Count 16:  Murder in furtherance of a continuing criminal
           enterprise;

Count 18:  Attempted escape from custody;

Count 21:  Conspiracy to escape from custody; and

Count 25:  Obstruction of justice.

Id.

---

[2]At the beginning of the 2255 hearing, the court notified the parties that
Judge Viken had previously been the Federal Public Defender for the District of
North Dakota, that one of the Assistant Federal Defenders during that time
period represented a co-defendant in this case and that there were e-mail
exchanges between Mr. Viken and that staff attorney, as well as exchanges with
Attorney Thomas Dickson.   Judge Viken had no independent recollection of his
limited involvement in the case.   (Docket 1467 at pp. 6:22-9:6).   After
consultation with counsel, Mr. Martinez waived any objection to Judge Viken
handling the 2255 proceeding.   Id. at pp. 10:3-11:6.

A jury trial began on April 7, 2008, for Mr. Martinez and two co-defendants with Judge Erickson presiding. (Docket 985). Mr. Martinez was represented by Attorneys Thomas Dickson and Daniel Gast. Id. During the course of the third day of jury selection all three defendants decided to enter guilty pleas. (Docket 987). Mr. Martinez expressed his intention to plead guilty without a formal plea agreement with the government. Id. The trial court was advised the government intended to argue in Mr. Martinez's case for a life sentence and Mr. Dickson would argue for a 30-year sentence. Id. at p. 1. The jury was released at 9:35 a.m. and the change of plea hearing for Mr. Martinez was scheduled for 11 a.m. that morning. Id. at p. 2. The details of the change of plea hearing will be discussed later in this order. At sentencing, Judge Erickson sentenced Mr. Martinez to life imprisonment on counts 1, 10, 15 and 16; 60 months on counts 18 and 21; and 120 months on count 25 with "all sentences to run concurrently to the life sentence." (Docket 1218 at p. 86:14-19; see also Docket 1195 at p. 3).[3]

In his 2255 petition, Mr. Martinez asserts two principal claims of ineffective assistance of counsel:

1. "[He] was improperly coerced into changing his plea[s] to guilty;"

_____

[3]On February 5, 2010, the Eighth Circuit affirmed the judgment of the district court in an unpublished *per curiam* opinion. United States v. Martinez, 364 Fed. Appx. 305 (8th Cir. 2010). On April 20, 2010, Mr. Martinez filed a petition for a writ of certiorari in the United States Supreme Court. The Supreme Court denied Mr. Martinez's petition. Martinez v. United States, 560 U.S. 946 (June 1, 2010).

and

2. "[His attorneys were not] adequately prepared for trial."

(Docket 1485 at p. 2).   He claims his attorneys were "ineffective because they improperly coerced [him] to change his plea to guilty.   [And they] continued to provide ineffective assistance as they failed to adequately prepare for trial."   <u>Id.</u> at p. 3.   Mr. Martinez asserts that but for their ineffective assistance, he "almost certainly [would] have elected to continue with trial."   <u>Id.</u>   The government opposes Mr. Martinez's petition.[4]   (Docket 1501).

## BURDEN OF PROOF

The Sixth Amendment to the Constitution affords a criminal defendant the right to assistance of counsel.   The Supreme Court "recognize[s] that the right to counsel is the right to effective assistance of counsel."   <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984) (internal quotation marks and citation omitted).   "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."   <u>Id.</u> at 687-88.   The defendant must also show that counsel's deficiencies prejudiced the defendant and affected the judgment.   <u>Id.</u> at 691.   <u>Stickland</u> established a two-prong test to judge an ineffective assistance of counsel claim:

---

[4]The government asks the court to reverse Judge Erickson's ruling that after application of the equitable tolling principle Mr. Martinez's 2255 petition was timely filed.   (Docket 1501 at pp. 17-21).   This court finds no justification for disturbing Judge Erickson's reasoned opinion on timeliness.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). See also Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998) (The burden of establishing ineffective assistance of counsel is on the defendant, who must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'") (citing Strickland, 466 U.S. at 689). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Hall, 296 F.3d at 692.

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.' " Id. (internal

citation omitted).

"[T]he two-part Strickland v. Washington test applies to challenges to

guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart,

474 U.S. 52, 58, (1985). "[I]n order to satisfy the 'prejudice' requirement, the

defendant must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on

going to trial." Id. at 59. "[T]he determination whether the error 'prejudiced'

the defendant by causing him to plead guilty rather than go to trial will depend

on the likelihood that discovery of the evidence would have led counsel to change

his recommendation as to the plea. This assessment, in turn, will depend in

large part on a prediction whether the evidence likely would have changed the

outcome of a trial." Id. "Similarly, where the alleged error of counsel is a

failure to advise the defendant of a potential affirmative defense to the crime

charged, the resolution of the 'prejudice' inquiry will depend largely on whether

the affirmative defense likely would have succeeded at trial." Id. "[T]hese

predictions of the outcome at a possible trial, where necessary, should be made

objectively, without regard for the 'idiosyncrasies of the particular

decisionmaker.' " Id. at 59-60 (citing Strickland, 466 U.S. at 695).

A 2255 petitioner "faces a heavy burden to establish ineffective assistance

of counsel . . . ." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

**A.**      **INEFFECTIVE ASSISTANCE-CHANGE OF PLEA**

Five witnesses testified at the 2255 hearing:   Ralph R. Erickson, Chief Judge for the District of North Dakota; Thomas Dickson, Mr. Martinez's lead trial counsel; Daniel Gast, Mr. Martinez's trial counsel; Mr. Martinez; and Attorney Ross Brandborg.   Mr. Martinez claims his testimony at the hearing supports his allegations his attorneys were ineffective because they (1) represented that guilty pleas would ensure less than a life sentence; (2) advised that if he did not plead guilty, they would withdraw from his case; and (3) suggested that if he did not plead guilty his brother, Alejandro Martinez, would be indicted.   (Docket 1485 at p. 3).   The court will separately address each of Mr. Martinez's claims.

1.   PLEAS OF GUILTY WOULD RESULT IN A 30-YEAR SENTENCE

Mr. Martinez alleges he changed his pleas "only after considerable encouragement from his counsel . . . in order to receive a sentence of thirty years." Id. at p. 4 (referencing Docket 1467 at p. 191).   The essence of this argument is that his attorneys told him there was no way the case could be won at trial and if Mr. Martinez pled guilty, he at least had the potential to receive a 30-year sentence. Id.   Mr. Martinez alleges his attorneys' testimony "shows counsel had no intention of putting forth a full and complete case, but also that counsel encouraged [him] to enter an open plea of guilty in a case punishable by life in prison." Id.   Mr. Martinez asserts because he was not "learned in the law or fully appreciative of the trial process . . . [he] was not aware of the risks associated with entering an open plea of guilty." Id.   He claims "he did not have

a full appreciation that the prosecution was able to recommend a life sentence." Id. at pp. 4-5. Mr. Martinez argues his attorneys should have done more to impress upon him the risks of a potential life sentence if he pled guilty. Id. at p. 5. He claims that had he "known he would be solely at the mercy of the Court, he would not have elected to plead guilty." Id. at p. 5.

Mr. Dickson testified he had a good relationship with Mr. Martinez. "I actually liked him very much. I enjoyed him. He was smart. He was charming. . . . I liked him, in all honesty, I really liked him very much." (Docket 1467 at p. 134:3-9). Mr. Dickson testified Mr. Martinez was never promised a 30-year sentence. Id. at pp. 69:24-70:2. Mr. Dickson insists he told Mr. Martinez they were "hopeful, but not confident" he would get less than a life sentence. Id. at pp. 70:23-71:2.

Mr. Gast met with Mr. Martinez frequently, especially after the authorities moved him from Jamestown to Fargo where Mr. Gast practiced. Id. at p. 147:12-18. He testified neither of the attorneys ever guaranteed Mr. Martinez less than a life sentence. Id. at p. 150:19-24. Mr. Gast insists that neither of them ever guaranteed Mr. Martinez any specific sentence. Id. Mr. Gast adamantly declared "[a]solutely not" when asked if defense counsel guaranteed Mr. Martinez a 30-year sentence. Id. at p. 246:1-3; see also id. at p. 151:5-8.

Mr. Dickson testified that had Mr. Martinez continued through trial he would have gotten "life for sure." Id. at p. 72:9-10. According to Mr. Dickson, pleading guilty provided his client a "chance that he didn't get life. That's what

the decision was about." Id. at p. 72:10-12.   Mr. Dickson testified Mr.

Martinez's goal was to get something less than a life sentence.   Id. at p. 73:2-4.

As Mr. Dickson put it:

> What did he have to lose [by going to trial]?   He had a chance, when
> he changed his plea, to get less than life.   If you go through a trial—
> there were two young children in that mobile home that night, that
> was part of the horror of this case, and they were going to be part of
> the trial of that.   That horror of these children and the photographs,
> it was all going to be played out, and I didn't think he had a chance
> with the jury.   I thought by the end of the trial the judge would be
> where the jury would be.   That was my opinion.

Id. at p. 129:7-16.

During the course of jury selection the defense team was notified that

co-defendant Alan Wessels had decided to enter into a plea agreement with the

government.   Id. at p. 158:6-20.   Mr. Gast went to the jail that evening and gave

the news to Mr. Martinez.   Id. at pp. 158:24-159:3.   "[I]t was at that point that

Mr. Martinez agreed to change his plea."   Id. at p. 159:3-4.   As Mr. Dickson

explained the change of plea scenario:

> It was his decision.   I would—I've done this a long—I know lawyers,
> defense lawyers, do it different. I don't twist their arms. It's
> ultimately their life, it's their choice.   I give my opinion as to what I
> think the outcome might be.   I leave it up to them.   And I support—
> I didn't twist his arm.   It was his call.   Nobody is going to coerce
> Gabriel Martinez into doing anything he doesn't want to do, not you,
> not me, not anybody.   That's just the way he is.

Id. at pp. 76:22–77:5.   Both Mr. Dickson and Mr. Gast forcefully deny Mr.

Martinez's allegation that they promised him a 30-year sentence.   Id. at

pp. 237:1-6 and 246:1-3.

Mr. Dickson testified he never suggested his relationship with Judge Erickson could ensure less than a life sentence. Id. at p. 66:24-67:15. Judge Erickson described his limited social relationship with Mr. Dickson from several years earlier and denied they had any relationship in which discussing sentencing of Mr. Martinez off-the-record would be appropriate. Id. at pp. 31:5-34:22.

On April 9, 2008, at the beginning of the change of plea hearing, Mr. Martinez was advised of the maximum sentences which could be imposed on each of the seven counts. (Docket 1234 at pp. 3:18-5:17). That advisement is summarized as follows:

Count 1: Conspiracy to possess with intent to distribute and distribution of methamphetamine had a "maximum term of imprisonment of life, [and] a mandatory minimum 10-year term of imprisonment." Id. at p. 3:18-23;

Count 10: Possession with intent to distribute methamphetamine had "a maximum term of imprisonment of life. . . .[and] a mandatory minimum 10-year term of imprisonment." Id. at p. 4:3-8;

Count 15: Death caused by use of a firearm during a crime of violence had "a maximum term of imprisonment of life . . . . [and] a mandatory 10-year consecutive term to the underlying conviction." Id. at p. 4:10-15;

Count 16: Murder in furtherance of a continuing criminal enterprise had "a maximum term of imprisonment of life, [and] a minimum mandatory 20-year term of imprisonment." Id. at p. 4:18-23;

Count 18: Attempted escape from custody had "a maximum term of imprisonment of five years." Id. at p. 5:1-5;

Count 21:    Conspiracy to escape from custody had "a maximum term of imprisonment of five years." <u>Id.</u> at p. 5:8-11; and

Count 25:    Obstruction of justice had "a maximum term of imprisonment of 10 years." <u>Id.</u> at p. 5:14-17.

Because of the requirement for consecutive sentences, Mr. Martinez was advised he faced a maximum sentence of life and a mandatory minimum sentence of 30 years. <u>Id.</u> at p. 5:21-23. Mr. Martinez acknowledged he understood the maximum sentences and the mandatory minimum sentences which could be imposed. <u>Id.</u> at p. 6:7-12.

The court advised Mr. Martinez of his constitutional rights. <u>Id.</u> at pp. 11:11-19:14. Mr. Martinez acknowledged understanding his constitutional rights as they were explained by the court. <u>Id.</u> at pp. 19:21-20-1. Mr. Martinez was then placed under oath. <u>Id.</u> at p. 20:2-11. Mr. Martinez acknowledged being able to read and write, that he had gone to college for a couple of years and suffered from no learning disability. <u>Id.</u> at p. 20:12-23. He stated he had never been treated or hospitalized for any mental illness, had not been treated for chemical dependency, alcoholism, obsessive-compulsive disorder or depression and was not having any difficulties understanding the hearing up to that point. <u>Id.</u> at p. 21:5-15. Mr. Martinez told the court that he had no "difficulty understanding or communicating with [his] lawyers." <u>Id.</u> at p. 21:16-18.

Judge Erickson addressed the present status of the case with

Mr. Martinez.

THE COURT:     Obviously we got to the point where we're in the middle of trying to pick a jury and try this case so I assume that you've had a chance to discuss this case with your lawyer and that you've had a chance to discuss the charges against you; is that true?

DEFENDANT MARTINEZ:     Yes, Your Honor.

THE COURT:     Did he explain to you the Fifth Superseding Indictment and the penalties that you faced under that Indictment?

DEFENDANT MARTINEZ:     Yes, he did, Your Honor.

THE COURT:     Did he answer all of your questions about those matters?

DEFENDANT MARTINEZ:     Yes.

THE COURT:     And do you feel like you understand what you're charged with and what the penalties are that you face?

DEFENDANT MARTINEZ:     Yes, Your Honor.

THE COURT:     At some point did you give Mr. Dickson authority to talk to the United States about—well, let's step back.  You're aware that there have been ongoing discussions between your lawyer, Mr. Dickson, and Mr. Myers on behalf of the United States.

DEFENDANT MARTINEZ:     Yes, Your Honor.

THE COURT:     And I've been informed that there is no arrangement or plea bargain that was ever made in this case, Plea Agreement that was ever made in this case, that this is a truly open plea; is that true?

DEFENDANT MARTINEZ:     That's correct, Your Honor.

THE COURT:     You understand that the parameters of the sentence, the range that we're going to be talking about at sentencing, is some period of years from 30 years to life and that that's the sentencing discretion that the Court will have on this open plea.   Do you understand that?

DEFENDANT MARTINEZ:     Yes, Your Honor.

THE COURT:     Now that means that under no circumstance could I ever impose a sentence of less than 30 years.   You understand that?

DEFENDANT MARTINEZ:     Yes, Your Honor.

THE COURT:     All right.   And the guideline range in this case may very well be a life sentence and in order for me to go—while that's simply advisory, I'll have to look at a bunch of facts and the statutes in order to go anything less than that life sentence if that's what the guidelines say.   You understand that?

DEFENDANT MARTINEZ:     Yes, Your Honor.

THE COURT:     And so that means that—and that's not to say I don't have discretion.   I want you to understand that I understand that I know under <u>United States v. Gall</u>[5] I have discretion to impose a reasonable sentence that is not less than the mandatory minimum, which in this case is 30 more than the maximum sentence which is life, okay?   But by entering up this plea you understand that you do face the possibility that I could sentence you to life in prison and if that happens that's life without the possibility of parole.

DEFENDANT MARTINEZ:     Yes, Your Honor.

---

[5]552 U.S. 38 (2007).

THE COURT:        Okay.  Did you have a chance to discuss the entry of this plea with your lawyer?

DEFENDANT MARTINEZ:        Yes, Your Honor.

Id. at pp. 22:2-24:14.   The court next addressed Mr. Martinez's attorney, Mr. Dickson, who stated that Mr. Martinez's decision to enter guilty pleas was not against counsel's advice.   Id. at p. 24:15-20.

As the court read each of the seven counts of the fifth superseding indictment, Mr. Martinez entered guilty pleas.   Id. at pp. 25:8-30:22.   Mr. Martinez reaffirmed his waiver of his rights to trial and the other constitutional rights given up by his guilty pleas.   Id. at pp. 30:23-32:3.   Mr. Martinez affirmed no one made any promises to get him to enter his guilty pleas and those pleas were of his own free will.   Id. at p. 32:4-10.   Based on Mr. Martinez's statements under oath, the court made a finding that the changes of plea were freely and voluntarily made.   Id. at p. 32:11-16.   A detailed factual basis for the guilty pleas was provided by the government and Mr. Martinez acknowledged the factual basis statement was accurate.   Id. at pp. 32:17-38:4.   The court found a factual basis existed to support each of Mr. Martinez's guilty pleas.   Id. at p. 38:5-6.

Sentencing occurred on December 12, 2008.   (Docket 1218).   The government called as a witness Detective Bradley Berg, a former member of the area drug enforcement task force.   Detective Berg provided a detailed summary of Mr. Martinez's drug activities within the time frame of the counts of conviction, Mr. Martinez's involvement in the shooting death of Mr. Avila including disposal

14

of the murder weapon, and other evidence about the crimes.   The agent testified

about Mr. Martinez's attempted escape from the Cass County, North Dakota, jail.

Id. at     pp. 9:13-37:13.

During the sentencing hearing, Mr. Martinez personally addressed the

court.

> Your Honor, my name's Gabriel Martinez, and I'm here today
> because of the crimes I've committed, the mistakes I made in the
> past, mistakes that I take full responsibility for.   I took a man's life,
> and it's something no man has a right to do.   I don't think there's
> anything today I could say or do to justify Mr. Avila's death,
> although I'd like to offer my sincere apology to his family that's here
> today and to the children.   I'm sorry for not only taking the father, a
> son and a brother.   I couldn't imagine losing a brother.   I have
> three of them and I couldn't.   I couldn't imagine.   I'm deeply sorry
> for the two children that had to witness it.   I really am.   Like I said,
> there's nothing I can say or do to bring Mr. Avila back.   I'm truly
> sorry for their loss.
>
> I'd also like to take the chance to apologize to the individuals that
> were drug into this case later on, the escape attempt, to their
> children and family, too.   I have two kids, too, that will grow up
> without me, and that kills me every day that I'm not with them.
>
> I'd also like to apologize to my family and friends.   I'm sorry I put
> them through this mess.
>
> Your Honor, I made—I made a lot of mistakes in my life, little
> mistakes, big mistakes I could easily mend with a gift or flowers or
> let time erase them, but unfortunately taking someone's life,
> irreplaceable, and all I ask is that I get out one day, if not for my
> children, for my grandchildren.
>
> That's all, Your Honor.   Thank you.

(Docket 1218 at pp. 76:13–77:16) (some capitalization omitted).

"Solemn declarations in open court carry a strong presumption of verity.

The subsequent presentation of conclusory allegations unsupported by specifics

is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). A "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (internal citation omitted). Allegations in the 2255 petition and Mr. Martinez's testimony contradicting his statements at the change of plea hearing and at sentencing are "inherently unreliable." United States v. Harris-Thompson, 751 F.3d 590, 603 (8th Cir. 2014). Mr. Martinez's "failure to assert objections to counsel's performance at the change-of-plea hearing refutes any claim of ineffective assistance of counsel as a basis for withdrawing the plea." United States v. Trevino, 829 F.3d 668, 672 (8th Cir. 2016).

The court finds no improper out-of-court or social relationship existed between Judge Erickson and Mr. Dickson and that they never discussed Mr. Martinez's plea options outside of the record. The court further finds neither defense attorney made any promises or guarantees that Mr. Martinez would receive a 30-year sentence by pleading guilty.

The colloquy with Judge Erickson at the change of plea hearing discloses Mr. Martinez knowingly, freely and voluntarily pled guilty to seven counts of the indictment. Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent. Boykin v. Alabama, 395 U.S. 238, 242 (1969).

Mr. Martinez's "allegations that he was coerced to plead guilty by false promises by his counsel fail[] to overcome the 'strong presumption of verity' that attached to statements made in 'open court.' " Nguyen, 114 F.3d at 704 (citing Blackledge, 431 U.S. at 74). The court finds Mr. Martinez's claims are "plainly contradicted by the Rule 11 colloquy at [the] change-of-plea hearing." Trevino, 829 F.3d at 672. See also United States v. Cruz, 643 F.3d 639, 643 (8th Cir. 2011) ("Many defendants face difficult choices about whether to plead guilty or proceed to trial, and the potential consequences of the different options are relevant to making that choice. An attorney's assessment of the likely outcome at a trial is one significant factor in a defendant's informed decisionmaking process. It does not amount to coercion that renders a plea involuntary.").

The court finds Mr. Martinez's testimony not credible in light of his sworn change of plea statements and his allocution at the time of sentencing. The court further finds the testimony of Judge Erickson, Mr. Dickson and Mr. Gast credible and supported by the record. Mr. Martinez knowingly, voluntary and intelligently pled guilty to all seven charges. Boykin, 395 U.S. at 242.

The court denies Mr. Martinez's 2255 petition on this issue.

2.     IF MR. MARTINEZ DID NOT PLEAD GUILTY, HIS ATTORNEYS WOULD WITHDRAW AS TRIAL COUNSEL

Mr. Martinez alleges that from the moment Mr. Dickson took on the case he was unprepared and unable to assist Mr. Martinez at trial. (Docket 1485 at p. 5). He claims this is most evident by Mr. Dickon's testimony that "from day one when [Judge Erickson] started calling me I said I couldn't do it by myself . . .

17

That never changed."   Id. (referencing Docket 1467 at p. 92:14-17).   When coupled with his attorneys "urging . . . to plead guilty," he argues Mr. Dickson's actions were "an indication he would withdraw representation should Mr. Martinez proceed with trial."   Id.   Mr. Martinez asserts these two factors gave him "little faith that his counsel was fully invested in putting forth an adequate defense at trial which was a substantial factor in his decision to change his plea to guilty."   Id.

Mr. Martinez claims Mr. Dickson threatened to withdraw but could not provide any specific details of how or when his attorney made that declaration. (Docket 1467 at pp. 186:1-187:15).   Mr. Dickson did file a motion to withdraw on December 11, 2007.   Id. at p. 94; see also Docket 827.   He testified the motion was filed to get Judge Erickson to appoint co-counsel, not with an intention of withdrawing from the case.[6]   (Docket 1467 at pp. 92:1-94:24 and 105:5-14).   Mr. Dickson insists he never threatened to withdraw during trial to force Mr. Martinez to plead guilty and Mr. Martinez's statement to that effect "is absolutely false."   Id. at pp. 105:17-20 and 237:7-17.

The court finds the testimony of Mr. Martinez not credible and Mr. Dickson's testimony credible on this issue.   The court finds no threat was made by Mr. Dickson to induce the changes of plea.   The court denies Mr. Martinez's 2255 petition on this issue.

---

[6]Judge Erickson appointed Attorney Brandborg, but an associate in his firm, Mr. Gast was co-counsel during pretrial discovery and at trial.   (Docket 1467 at pp. 94:12-95:6; see also Docket 841.

3.    ALEJANDRO MARTINEZ WOULD BE INDICTED

Mr. Martinez claims he feared that his brother Alejandro would be indicted if he did not plead guilty.   He asserts this "was also an influential factor" in his decision to change his pleas.   (Docket 1485 at p. 6) (referencing Docket 1467 at p. 185:20- 25).   He claims his attorneys were ineffective because they did not tell him whether there was any evidence to implicate Alejandro or how his brother could be indicted.   Id.   He argues the attorneys' silence on the matter permitted his fear of Alejandro's potential indictment "to fester."   Id.   Because he feared his brother's indictment and his attorneys' failed to communicate with him about this concern, Mr. Martinez claims he chose to plead guilty.   Id.

Mr. Martinez testified he had heard a drug conspiracy member, Martin Carrillo, accused Alejandro of threating him, so when his brother's name appeared on the government's witness list, Mr. Martinez thought his brother might be in trouble.   (Docket 1467 at p. 203:1-17).   Mr. Martinez claims he pled guilty to protect his brother.   Id. at pp. 203:18-23.

Mr. Gast testified counsel told Mr. Martinez they assumed Alejandro was on the government's witness list because he visited Mr. Martinez in jail.   Id. at p. 165:3-10.   Mr. Dickson testified Mr. Martinez's statement was "false" that the attorneys said things would "go bad" for Alejandro if Mr. Martinez did not plead guilty.   Id. at pp. 106:12-16 and 238:1-5.

The court finds the testimony of Mr. Martinez not credible and the testimony of Mr. Dickson and Mr. Gast credible on this issue.   The court finds

Mr. Martinez's desire to protect his brother was never conveyed to his attorneys. His assertion that his attorneys failed to properly advise him on this issue, before he entered the guilty pleas, is not credible. The court denies Mr. Martinez's 2255 petition on this issue.

### B. INEFFECTIVE ASSISTANCE-ATTORNEYS WERE NOT PREPARED FOR TRIAL

1. FAILURE TO SUBPOENA EXCULPATORY WITNESSES FOR TRIAL

Mr. Martinez claims his attorneys failed to interview any witnesses and did not issue trial subpoenas even though he "suggested at least three witnesses which could provide helpful testimony." (Docket 1485 at p. 7). According to Mr. Martinez those witnesses included "a video of a young girl, who was witness to the homicide," but could not identify him "as the shooter"; a Cass County Jail inmate whose statement identified "Mike Petzold, who was present at the scene [and] claimed to be the shooter"; and a neighbor's statement suggesting "that a woman, not Alan Wessels, . . . was driving the vehicle after the homicide . . . ." Id. Mr. Martinez argues these witnesses would cast doubt on his role as the shooter in Mr. Avila's murder. Id.

Presented as a sealed exhibit during the 2255 hearing was the forensic interview of a then four-year-old female witness to the homicide. (Hearing Exhibit 2). The child never identified the individual who entered the trailer and shot Mr. Avila. Id.; see also Docket 1467 at p. 122:2-7. Mr. Dickson testified the children present in the trailer could not identify the shooter and questioning law enforcement officers about this matter would not have been helpful to his

client's case.   (Docket 1467 at pp. 86:7-9 and 121:23-123:1).   Mr. Martinez's allegation that this video supports his claim that his attorneys failed to properly investigate this line of defense is without merit.

Mr. Gast investigated the jailhouse rumor that Mr. Petzold was the shooter and concluded the rumor was without merit.   "I remember looking at it and finding out that there was really nothing in that.   If anything, it was just someone trying to be macho."   Id. at p. 243:16-25.   Similarly, Mr. Dickson testified that "if there was any plausible way of pointing the finger at somebody else, we would have done that [accused someone else of the murder]."   Id. at p. 239:7-9.   Mr. Martinez's allegation his attorneys failed to properly investigate this line of defense is without merit.

Mr. Gast testified about the possibility the getaway driver was a woman.

And I remember . . . some people said that they saw a woman driving a car, and my recollection is that there was also another potential car in the trailer park that night that people had said—I think a different color car.   They were in a black car and this was a white car, vice versa.   And as a brand-new attorney, I sunk my teeth into that, and I had charts . . . we're going to find out it's this guy, and it's going to be one of those TV moments, and so it was a couple days . . . [but] it just didn't materialize.   The other car was nothing, and everything pointed back [at Alan Wessels].   And more interviews kind of cleared up—the people who said they thought it was a woman were [asked] "Well, are you sure?" [and they responded] "No, of course we're not sure."   It was very shaky ground. . . . I remember the disappointment when I realized that that wasn't a viable line to bring to the trial.

Id. at pp. 244:14–245:7.   Mr. Dickson testified Mr. Gast thoroughly investigated the neighbor's statement that the getaway driver was a woman, but the statement "wasn't credible. . . . It was clear Alan Wessels was the driver."   Id. at

21

p. 239:17-24.   Mr. Martinez's allegation that his attorneys failed to properly investigate and assert this line of defense is without merit.

The attorneys properly investigated all three witnesses offered by Mr. Martinez and their strategic decisions not to pursue these lines of inquiry at trial do not constitute ineffective assistance of counsel.   Strickland, 466 U.S. at 689. Beyond these three unhelpful witnesses, Mr. Martinez "makes no substantial argument that a more diligent investigation by his attorney[s] would have provided any information beneficial to [his] case."   Benson v. United States, 552 F.2d 223, 225 (8th Cir. 1977).

The court denies Mr. Martinez's 2255 petition on this issue.

2.   COUNSEL WERE NOT ZEALOUS ADVOCATES

Mr. Martinez argues because Mr. Dickson did not want to take the criminal case appointment, particularly without co-counsel, this was evidence of a lack of zealousness.   (Docket 1485 at p. 8).   Because his case involved "over 47,000 pages" of documents, together with "numerous video and audio recordings," Mr. Martinez claims Mr. Dickson "was overwhelmed" and this "affected his ability to adequately represent" him at trial.   Id.   Mr. Martinez claims Mr. Dickson's sense of being overwhelmed continued even after co-counsel was appointed.   Id. According to Mr. Martinez, the ultimate effect of Mr. Dickson being overwhelmed was to pressure him to plead guilty.   Id.

Mr. Dickson practiced criminal law for over 30 years in both federal and state courts in North Dakota.   (Docket 1467 at p. 127:5-14).   His practice

included a significant number of complex criminal cases, many being jury trials which resulted in acquittals. <u>Id.</u> at pp. 127:24-128:4. His trial experience included defending defendants in murder cases in state and federal court. <u>Id.</u> at p. 81:3-5.

Judge Erickson testified as to why he appointed Mr. Dickson to represent Mr. Martinez: "I needed to find a senior lawyer who had done extensive criminal practice, and someone who understood federal criminal law." <u>Id.</u> at p. 26:8-11. The judge was aware of Mr. Dickson's busy trial practice, but was confident he had the ability to adequately represent Mr. Martinez. <u>Id.</u> at pp. 28:14-29:1.

Mr. Gast was a recent law school graduate, but spent time as a law clerk for a well-respected North Dakota criminal defense attorney. <u>Id.</u> at pp. 145:16-146:3. Mr. Dickson testified the experience Mr. Gast brought to the defense team fit his role as the second-chair attorney in Mr. Martinez's case. <u>Id.</u> at p. 60:6-15. Mr. Dickson testified Mr. Gast "did a lot, he really did a lot of work on the case, did a lot of good work." <u>Id.</u> at p. 61:3-4.

Mr. Dickson testified he reviewed all of the discovery as it came into his office. <u>Id.</u> at p. 82:1-5. "My strongest point is probably my work ethic, in my opinion. It's not my charm or my voice or my perception, it's—I'm a farm kid, and I grind it out the hard way. I looked at everything, as far as I know." <u>Id.</u> at p. 131:7-11. Mr. Dickson testified he sought out exculpatory evidence from the discovery but "there was no exculpatory information to review." <u>Id.</u> at p. 96:3-4.

Mr. Gast was not able to find any exculpatory evidence in any of the discovery he reviewed.   Id. at pp. 154:24-155:4.

The record discloses Mr. Dickson engaged in appropriately aggressive pretrial motion practice and was fully prepared to defend Mr. Martinez at trial. Among the pretrial filings were the following:

1.  Motion to sever the attempted escape charge from the drug conspiracy charges.[7]   (Docket 785);

2.  Motion to sever from co-defendant Wessels.   (Docket 788);

3.  Motion to compel disclose of government witnesses.   (Docket 792);

4.  Motion for immediate disclosure of Jencks Act[8] statements and other statements.[9]   (Docket 795);

5.  Motion for change of venue on the murder charge.[10]   (Docket 799);

---

[7]Mr. Dickson felt the attempted escape charge was "horribly damning" to his client because Mr. Martinez "literally sawed through some of the bars" and compromised the integrity of two female correctional officers at the jail as part of his plan to escape.   (Docket 1467 at p. 88:5-16).

[8]18 U.S.C. § 3500.   "[A] defendant on trial in a criminal prosecution is entitled to relevant and competent reports and statements in possession of the Government touching the events and activities as to which a Government witness has testified at the trial."   Goldberg v. United States, 425 U.S. 94, 104 (1976) (internal citation omitted).

[9]Mr. Dickson testified he filed these discovery requests in an effort to get the government to narrow the issues for the trial and to permit him to prepare more efficiently for trial.   (Docket 1467 at pp. 89:24-91:6).

[10]Because the alleged murder occurred in East Grand Forks, Minnesota, Mr. Dickson felt venue was proper in the District of Minnesota and his client would "get a more diverse jury pool."   (Docket 1467 at p. 90:5-21).

6. Motion to dismiss counts 15 and 16, which related to the murder charge. (Docket 801);

7. Motion for bill of particulars. (Docket 803);

8. Motion to withdraw as counsel.[11] (Docket 827); and

9. Motion to produce jury pool materials. (Docket 896).

Mr. Dickson testified he prepared the case with a strategy of impeaching the cooperating witnesses based on their criminal histories and cooperation agreements. (Docket 1467 at pp. 65:14-66:3; 87:3-6; and 234:18-235:13). He felt it was important to discredit Mr. Petzold and Mr. Carrillo. Both were involved in the murder in East Grand Forks. Id. at p. 85:6-21. Mr. Dickson believed he was fully prepared to try the case to verdict. Id. at p. 134:12-16. Based on his professional experience, Mr. Dickson testified he was "ready to try the case, without question." Id. at 131:17-18.

Judge Erickson testified the case "was hotly contested. . . . It was litigated pretty fiercely. And it's what I would expect in a case of this type." Id. at p. 40:15-22. The judge believed the defense attorneys were making good tactical decisions with their pretrial motions practice. Id. at p. 41:20-22 ("I felt like I understood exactly tactically where the defense lawyers were going at every stage of these proceedings.").

A portion of Mr. Dickson's correspondence file was copied at the request of Mr. Martinez's habeas attorney and received as exhibit TAD00001-TAD00172 at

---

[11]As mentioned earlier in this order, Mr. Dickson testified this motion was a tactical filing in order to get Judge Erickson to appoint co-counsel. (Docket 1467 at pp. 92:1-94:24).

the 2255 hearing.   Id. at p. 82:6-20.   In this correspondence are a number of

letters Mr. Dickson sent to Mr. Martinez prior to trial.   Summaries of those

letters are as follows:

|  |  |
|---|---|
| February 9, 2007 | Report of meeting with Martinez yesterday. Martinez does not want to engage in plea negotiations with government.   Dickson planning to travel to D.C. for a meeting with Department of Justice to resolve the pending death penalty claim. TAD00170; |
| April 10, 2007 | Status hearing on pending discovery scheduled and asking Martinez to sign a waiver of his right to attend the hearing. TAD00165-66; |
| May 30, 2007 | Telephone conference with client of yesterday and Dickson will report back after the DC meeting on death penalty issue.   Reminded client to not speak to anyone about his case. TAD 00164; |
| July 3, 2007 | Asking Martinez to sign a waiver of appearance for status conference. TAD00160-61; |
| July 13, 2007 | Dickson found book requested by Martinez. Will send to him as soon as it arrives. TAD00158; |
| July 23, 2007 | Providing Martinez with a copy of motion for continuance.   TAD00152-57; |
| September 5, 2007 | Co-defendant Arandes entered plea agreement with two consecutive life sentences.   If he meets all the conditions, Arandes has a chance to get out in 40 years plus possible good time.   Dickson inquiring as to whether this changes Martinez's mind about entering into a plea agreement.   TAD00151; |

| | |
|---|---|
| December 4, 2007 | Providing Martinez with copies of pretrial briefs.   TAD00143; and |
| December 14, 2007 | Included report of law clerk e-mail to counsel about problems viewing government CDs and video files and asking Martinez to check if his laptop at jail will allow viewing of this discovery.   TAD00138. |

Mr. Martinez's letters to Mr. Dickson before trial, while generally expressing concern the trial is coming too quickly, included the following declarations or summaries:

| | |
|---|---|
| July 5, 2007 | Martinez had some further questions for Dickson since their last meeting and was looking forward to their next meeting. TAD00159; |
| October 23, 2007 | "You are by far one of the best attorneys and are familiar with murder cases, but as we both know funds are limited, I just want my right to a fair trial Tom. . . . I've never questioned your ability to this case."   TAD00149-50; and |
| December 3, 2007 | Martinez acknowledged the government wanted a life sentence.   Asks Dickson to get some new discovery to Martinez and file discovery motions and a motion for continuance.   TAD00144-46. |

Mr. Dickson's correspondence with Mr. Martinez continued after the April 9, 2008, change of plea hearing.   Those letters are summarized as follows:

| | |
|---|---|
| August 11, 2008 | Providing Martinez with a copy of the presentence report.[12]   TAD00089-128; |

---

[12]The presentence report, dated August 6, 2008, was admitted as an exhibit at the 2255 hearing.   TAD00090-128.   The report determined that with "a criminal history of VI and a calculated offense level of 46," the "result[ing] guideline sentence [is] life."   TAD00126.

| August 21, 2008 | Asking Martinez to undergo a complete medical and psychological evaluation before sentencing.   TAD00088; |
| September 22, 2008 | Providing Martinez with the initial and revised presentence reports and the government sentencing brief.   TAD00086; and |
| April 21, 2009 | Providing Martinez with copy of the change of plea transcript.   TAD00032; |

Mr. Martinez's letter to Mr. Dickson on June 23, 2008, asked his attorney to try to arrange a visit with Mr. Martinez's two young children at the Cass County jail before the sentencing hearing.   TAD00129.   This letter makes no mention of a guaranteed 30-year sentence.   Id.

The court finds the testimony of Mr. Martinez not credible and the testimony of Judge Erickson, Mr. Dickson and Mr. Gast credible and consistent with the record on this issue.   Mr. Martinez's allegations that his attorneys were not properly prepared for trial or did not zealously defend him are without merit. The court denies Mr. Martinez's 2255 petition on this issue.

**C.       BUT FOR THE INEFFECTIVE ASSISTANCE OF COUNSEL, MR. MARTINEZ WOULD HAVE PERSISTED IN GOING TO TRIAL**

In the analysis above, the court found that Attorneys Dickson and Gast provided effective assistance of counsel to Mr. Martinez, so an examination of this section of Mr. Martinez's claim is not necessary.   However, the court will conduct that analysis for the record.

Mr. Martinez insists that but for his attorneys' ineffective assistance, he would have persisted in going to trial. (Docket 1485 at p. 9). He claims that had the trial continued, "the evidence with exculpatory characteristics may have cast reasonable doubt among the jurors." Id. He submits that even if he had been convicted at trial, there may have been evidence which would have "persuaded the Court to pass a sentence of less than life . . . ." Id.

During the 2255 hearing, Judge Erickson explained his decision to impose a life sentence.

> Here's the thing. As I saw the driver in this case, when it came to sentencing it was a pretty straightforward case from my point of view.
>
> 1) This was a murder for money. There's nothing else about it. It's about money and about somebody insulting someone else, all right?
>
> 2) It was a murder that took place in the victim's home.
>
> 3) It took place in the victim's home with the victim's child there and a neighbor child there, and the people who pulled the trigger knew that. Those kids, to get out of that house, had to walk around the bleeding, dying, father figure and neighbor figure in their lives. A man that could do that is dangerous, and a man who would do that should be in prison, in my world. I don't care whether he's convicted after a trial, I don't care if he pleads guilty, someone who will kill another man for money is always dangerous because there's always money on the table somewhere again.

(Docket 1467 at pp. 43:10-44:4). Mr. Dickson believed Mr. Martinez would have been convicted on all seven counts had he completed his jury trial. Id. at p. 128:18-24).

Mr. Martinez was warned during the change of plea hearing that a life sentence was a possibility. Mr. Martinez understood the presentence report

recommended a life sentence. Throughout the plea and sentencing phases Mr. Martinez did not claim his attorneys guaranteed a 30-year sentence. Even after Judge Erickson announced the life sentence, Mr. Martinez did not object on the basis there was an agreement for a 30-year sentence and he took no steps to withdraw his plea.

Before trial, Mr. Martinez wrote of his confidence in Mr. Dickson. "You are by far one of the best attorneys and are familiar with murder cases . . . . I've never questioned your ability to this case." TAD00149-50. At the change of plea hearing after the government provided a detailed factual basis for the guilty pleas, Mr. Martinez acknowledged the factual basis statement was true. (Docket 1234 at pp. 32:17-38:4). Then at sentencing, Mr. Martinez confirmed his unwavering responsibility for the crimes to which he pled guilty.

> I'm here today because of the crimes I've committed, the mistakes I made in the past, mistakes that I take full responsibility for. I took a man's life, and it's something no man has a right to do. I don't think there's anything today I could say or do to justify Mr. Avila's death . . . . I'm deeply sorry for the two children that had to witness it. I really am. Like I said, there's nothing I can say or do to bring Mr. Avila back. I'm truly sorry for their loss. . . . Your Honor, I made—I made a lot of mistakes in my life, little mistakes, big mistakes . . . but unfortunately taking someone's life, irreplaceable . . . ."

(Docket 1218 at pp. 76:14-77:13) (some capitalization omitted).

Mr. Martinez's 2255 hearing testimony which contradicts his sworn statements at the change of plea hearing and his allocution at the sentencing hearing is "inherently unreliable." Harris-Thompson, 751 F.3d at 603. Mr. Martinez "has not shown that he 'would not have [pled] guilty and would have

insisted on going to trial' absent his attorney's [claimed ineffective assistance.]" Tinajero-Ortiz v. United States, 635 F.3d 1100, 1104 (8th Cir. 2011) (citing Hill, 474 U.S. at 59).

Mr. Martinez "presented no convincing evidence to establish that his prior admissions of guilt were untrue." Cruz, 643 F.3d at 643. He cannot establish prejudice as required under Strickland. Tinajero-Ortiz, 635 F.3d at 1103–05.

The court denies Mr. Martinez's 2255 petition on this issue.

## CONCLUSION

Mr. Martinez has not carried his "heavy burden to establish ineffective assistance of counsel . . . ." DeRoo, 223 F.3d at 925. Mr. Martinez failed to overcome the "strong presumption that [his] counsel[s'] conduct [fell] within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The effective assistance of counsel afforded Mr. Martinez by Attorneys Dickson and Gast guaranteed his rights under the Sixth Amendment. Id. at 687. Mr. Martinez was not prejudiced by the professional performance of his attorneys. Id.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's 2255 petition (Docket 1411) is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2255 Cases in the United States District

Courts, the court declines to issue a certificate of appealability. A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (emphasis added). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if a "court could resolve the issues differently, or the issues deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). Mr. Martinez has not made a substantial showing of the denial of a constitutional right.

Although the court declines to issue a certificate of appealability, Mr. Martinez may timely seek a certificate of appealability from the United States Court of Appeals for the Eighth Circuit under Fed. R. App. P. 22. See Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts and Fed. R. App. P. 22.

Dated March 8, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA